UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
LATOYA HOYLE ex rel. L.M.,

              Plaintiff,

              - against -

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-6395 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Latoya Hoyle ("Plaintiff"), proceeding *pro se*, brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her daughter's claim for Disability Insurance Benefits ("DIB"). The Acting Commissioner of Social Security ("Commissioner") has moved unopposed for judgment on the pleadings. (Dkt. 9.) The Commissioner seeks affirmation of the denial of Plaintiff's claims on behalf of her daughter. For the reasons set forth below, the Court denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Order.

## BACKGROUND

### I. PROCEDURAL HISTORY

On May 3, 2011, Plaintiff filed an application for DIB, claiming that her daughter ("L.M."), the claimant, has been disabled since October 25, 2010. (Tr. 12, 15.)[1] The claim was initially denied on October 7, 2011. (Tr. 127-129.) After her daughter's claim was denied, Plaintiff requested a hearing before an administrative law judge ("ALJ") on October 25, 2011 (Tr. 133-34) and appeared at said hearing on August 28, 2012 (Tr. 35-47). By decision dated January 16, 2013,

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

ALJ David Nisnewitz found that L.M. was not disabled within the meaning of the Social Security Act. (Tr. 12.) On January 31, 2013, Plaintiff requested a review of the decision by ALJ Nisnewitz (Tr. 156) and the Appeals Council remanded the claim for a new hearing in an order dated May 22, 2014 (Tr. 12). On March 11, 2015, ALJ Lori Romeo held a second hearing that was adjourned to locate additional medical records (Tr. 88-104) and on August 19, 2015, ALJ Romeo resumed the hearing (Tr. 48-87). By decision dated September 24, 2015, ALJ Romeo found that L.M. was not disabled. (Tr. 12-29.) On or about June 20, 2016, Plaintiff requested a review of the ALJ's decision. (Tr. 4-6.) The Appeals Council denied the request for review on September 13, 2016. (Tr. 1-3). Based upon this denial, Plaintiff filed an action in this Court seeking reversal or remand of the ALJ's September 24, 2015 decision.

## II. STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (alterations and internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, "it

is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013). Where a motion for judgment on the pleadings is unopposed, "the court may not grant the motion by default . . . the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." *McDowell v. Comm'r of Soc. Sec.*, No. 08-CV-1783 NGG, 2010 WL 5026745, at *1 (E.D.N.Y. Dec. 3, 2010) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)); *see also Martell v. Astrue*, No. 09–cv–1701 (NRB), 2010 WL 4159383, *2 n.4 (S.D.N.Y. Oct. 20, 2010).

### III. ELIGIBILITY STANDARD FOR SOCIAL SECURITY DISABILITY BENEFITS

To receive DIB, claimants must be disabled within the meaning of the Act. An individual under the age of 18 "shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C); *see also Miller v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 384, 386 (2d Cir. 2010) (summary order).

In determining whether a child is eligible for disability benefits, the ALJ applies a three-step analysis. 20 C.F.R. § 416.924(a). First, the ALJ determines whether the child is engaged in substantial gainful activity; if so, the child is deemed not disabled and the inquiry ends. *Id.* §§ 416.924(a), (b). Second, the ALJ determines whether the child has a medical impairment or combination of impairments that is "severe"; if the child is found not to have such an impairment or combination of impairments, she shall be deemed not disabled and the inquiry terminates. *Id.*

3

§§ 416.924(a), (c). Finally, at the third step, the ALJ must determine whether the impairment meets, medically equals, or functionally equals a disability listed in the SSA's regulatory Listing of Impairments ("Listings"). *Id.* §§ 416.924(a), (d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings).

The standards for functional equivalence are set forth in 20 C.F.R. § 416.926a, *id.* § 416.924(e), and require that a child have an impairment or combination of impairments that results in "marked" limitations in two, or "extreme" limitations in one, of the following six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id.* §§ 416.926a(a), (b). The regulations are detailed, with a general description of each domain as well as age group descriptors that "provide examples of activities that illustrate the typical functioning of children in different age groups" for most of the domains. *Id.* In this analysis of functional equivalence, an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain" in order for the child to be disabled and qualify for benefits. *Id.* § 416.926a(a).

A "marked" limitation exists where the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). To have a "marked" limitation in the "health or well-being" domain, there must be an exacerbation of an impairment "more often than 3 times in a year or once every 4 months." *Id.* § 416.926a(e)(2). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." *Jones ex rel. T.J. v. Astrue*, No. 07-CV-4886 (SLT), 2010 WL 1049283,

at *6 (E.D.N.Y. Mar. 17, 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)), *aff'd sub nom. Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is found where "episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation." *Id.* § 416.926a(d).

## IV. RELEVANT FACTS AND MEDICAL RECORDS

Because the Commissioner's motion is unopposed, the Court adopts the facts set forth in the Commissioner's moving brief as if set forth fully herein (*see* Dkt. 10 at 6-22 (setting forth relevant non-medical and medical evidence); Dkt. 7 (Administrative Transcript)), and will recite the facts only as relevant to the Court's decision. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014) (noting that in the case of an unopposed motion, "there is no need for a district court to robotically replicate the defendant-movant's statement of undisputed facts and references to the record or otherwise serve as an assistant to our law clerks") (citation omitted). Though an unopposed motion for judgment on the pleadings "allow[s] the district court to accept the movant's factual assertions as true," the Court must independently review the record in order to "determine from what it has before it whether the moving party is entitled to [] judgment [on the pleadings] as a matter of law." *Vt. Teddy Bear Co.*, 373 F.3d at 246 (citation and internal quotation marks omitted)).

## V. ALJ DECISION

ALJ Romeo's September 24, 2015 decision followed the three-step evaluation process established by the SSA to determine whether a child claimant is disabled. (Tr. 26-36.) At step

5

one, the ALJ found that L.M. had not engaged in substantial gainful activity between her alleged onset date (October 25, 2010) through the date of decision (September 24, 2015). (Tr. 15.) At step two, the ALJ found that L.M. had the severe impairment of seizure disorder and "a non-medically determinable impairment of attention deficit hyperactivity disorder (ADHD) and asthma." (Tr. 16.) At step three, the ALJ determined that Plaintiff's impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) In reaching this determination, the ALJ considered Listing 111.00 ("Neurological Impairments"). The ALJ then evaluated L.M.'s seizure disorder to determine whether it was functionally equivalent to any Listing. (Tr. 16-28.)

The ALJ found that L.M. had no limitations in the domains of acquiring and using information and attending and completing tasks, as well as less than marked limitations in the domains of: interacting and relating with others; moving about and manipulating objects; caring for herself; and health and physical well-being. (Tr. 23-28.) The ALJ determined that L.M.'s impairments did not cause two marked limitations or an extreme limitation in the six functional domains. In reaching this determination, the ALJ gave "great weight" to the opinion of Dr. Thomas DePaola, an agency consultative examiner, who found that "while claimant does have a seizures disorder, it did not significantly inhibit her ability to function on a daily basis." (Tr. 22.) She also gave "great weight" to the opinion of Dr. Abby Greenberg, who testified at the August 2015 ALJ Hearing as a medical expert, that L.M. had less than marked limitations in the domains of interacting and relating with others; moving about and manipulating objects; caring for herself; and health and physical well-being. (*Id.*) Finally, the ALJ gave "some weight" to the opinion of Dr. Susie Chow, another agency consultative examiner, who stated that L.M.'s "seizure disorder is a severe impairment and somewhat affects her daily functioning." (*Id.*) The ALJ gave "lesser

6

weight" to Dr. Chow's diagnosis of ADHD and asthma. (*Id.*) As a result, the ALJ found that L.M.'s impairments were not functionally equal to a Listing and concluded that L.M. was not disabled within the meaning of the Act. (Tr. 28.)

## DISCUSSION

The Court remands the Commissioner's decision on three grounds. First, the ALJ failed to seek a medical opinion from Dr. Nirmala Mitra, one of L.M.'s treating physicians. Second, the ALJ failed to properly evaluate Plaintiff Hoyle's credibility. Third, the ALJ failed to develop the record with respect to L.M.'s diagnosis of ADHD.

As an initial matter, the only medical opinions that the ALJ considered in her decision were those of the three agency examiners. She gave "great weight" to the opinions of Dr. DePaola and Dr. Greenberg and "some weight" to Dr. Chow's opinion, but did not have or obtain a medical opinion from any of L.M.'s own treating physicians. (Tr. 22.) ALJ Romeo did make two requests for records and a functional assessment, medical report, and child's mental impairment evaluation from Dr. Marc Alerte—L.M.'s physician—but he failed to comply. (Tr. 181-98, 221-40, 323-40.) However, the ALJ did not seek an assessment or evaluation from Plaintiff's other treating physician, Dr. Mitra, an attending physician at Woodhull Medical and Mental Health Center ("Woodhull"). Dr. Mitra was the attending physician during fourteen of L.M.'s visits to Woodhull for treatment of her seizure disorder between April 2013 and February 2015. (*See* Tr. 450, 455, 465, 494, 495, 524, 527, 532, 534, 536, 539, 542, 546, 560.) While Dr. Mitra's findings were equivocal and, on their face, might not appear to support Plaintiff's claims about the severity of her daughter's condition, that fact alone is not sufficient to satisfy the requirements of the treating physician rule, particularly where the claimant is *pro se*. Under the "treating physician rule," an ALJ is required to consider, if not "grant controlling weight to", the opinion of a claimant's treating

physician "if the opinion is well supported by medical findings and is not inconsistent with other substantial evidence." *Rosado v. Barnhart*, 290 F. Supp.2d 431, 438 (S.D.N.Y. 2003); *see also* 20 C.F.R. § 404.1527(d)(2); *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998). As this court explained in *Peed v. Sullivan*,

> What is valuable about the perspective of the treating physician—what distinguishes him [or her] from the examining physician and from the ALJ—is his [or her] opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his [or her] evidence so much more reliable than that of a examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. . . . Thus, when the claimant appears *pro se*, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

778 F.Supp. 1241, 1246 (E.D.N.Y. 1991); *Rosado*, 290 F. Supp.2d at 438. The ALJ's failure to develop the record by seeking a report from Dr. Mitra, one of L.M.'s treating physicians, about the extent of the child claimant's disability constitutes sufficient grounds for remand.

Second, the ALJ failed to properly evaluate Plaintiff Hoyle's credibility. Because L.M. is a minor and cannot testify about her disability, the ALJ must seek and evaluate her mother's testimony. "As a fact-finder, an ALJ is free to accept or reject testimony [of the guardian of a disabled child]. A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record. The failure to make credibility findings . . . fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [the] conclusion that claimant is not under a disability." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988); *see also Carroll v. Sec. of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983); *Hamedallah ex rel. E.B. v. Astrue*,

8

876 F. Supp. 2d 133 (N.D.N.Y. 2012). In this case, the ALJ does not explicitly state whether she finds Ms. Hoyle credible, but she does make two negative credibility determinations that, particularly in light of claimant's *pro se* status, warrant remand. "When a claimant properly waives [her] right to counsel and proceeds *pro se*, the ALJ's duties are 'heightened.' The ALJ must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts.'" *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

In the first example, commenting on the fact that claimant's mother failed to appear at some pediatric neurology appointments, the ALJ found that "[w]hile the failure to report to the medical appointments is not definitive of not having a disability, it substantially undermines Ms. Hoyle's claims that her child was having frequent seizures" between December 2010 and May 2011. (Tr. 18.) Yet, despite having three separate ALJ hearings with two different ALJs (*see* Tr. 35-104), the ALJ did not ask Ms. Hoyle why she missed these appointments, before drawing a negative inference as to Ms. Hoyle's credibility and ultimately the severity of L.M.'s seizure disorder. The record reveals one potential explanation for this lapse that was not explored by the ALJ: at a doctor's appointment on December 30, 2010, Ms. Hoyle stated she had not been able to get L.M. an EEG appointment because of "insurance problems". (Tr. 378.) Clearly, it would be improper to discredit Ms. Hoyle's reports regarding the frequency of her daughter's seizures—the critical issue in this matter—based on Ms. Hoyle's insurance issues.

In a second example, the ALJ found that "[t]here is evidence that the claimant's mother has not been entirely compliant in insuring the claimant is properly medicated, which suggests that the symptoms [of seizure] the mother notices are not as limiting as alleged." (Tr. 22.) Again, the

9

ALJ did not inquire as to the reason why Ms. Hoyle had not been compliant with respect to L.M.'s, medication regimen, despite the fact that, according to the administrative record, Ms. Hoyle previously had objected to L.M. taking Keppra because it made L.M. "very hyperactive", such that L.M. was "hitting other children, not listening to mother, [and crying] a lot". (Tr. 19, 45, 433, 457, 463.) At the August 2015 ALJ Hearing, Plaintiff testified that the Depakote caused L.M. to be "all over the place, everything". (Tr. 60.) Given how crucial Ms. Hoyle's credibility was to the ALJ's determination of whether L.M. has a "marked" limitation or possibly an "extreme" limitation based on the frequency of her seizures—which Ms. Hoyle described at the 2012 ALJ Hearing as "every other day" (Tr. 41), and at the August 2015 ALJ Hearing, "every day[,] . . . [e]very other day" (Tr. 63)[2]—the ALJ's failure to develop the record with respect to Ms. Hoyle's testimony and credibility warrants remand.

Finally, with respect to L.M.'s ADHD claim, the ALJ found that "the claimant was never diagnosed with this condition by any treating source and the Vanderbilt rating[3] given by her teacher indicated no ADHD symptoms." (Tr. 16.) The ALJ gave "lesser weight" to Dr. Chow's diagnosis of ADHD for the same reasons (Tr. 22) and also noted that claimant "was evaluated in the ADHD clinic, which diagnosed her with age-appropriate and hyperactive behavior at home" (Tr. 21). In

---

[2] Specifically, if the ALJ credited Ms. Hoyle's testimony about the frequency of L.M.'s seizures, L.M would certainly meet the "marked" limitation standard of the "health and well-being" domain since L.M. had seizures "more often than 3 times in a year or once every 4 months." 20 CFR 416.926a(e)(2). Moreover, if the ALJ found that L.M. was having seizures "every day" or "every other day," as Plaintiff testified, L.M. would also likely meet the "extreme" limitation standard requiring "episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation" and would, therefore, qualify for disability benefits. (*Id.*)

[3] A Vanderbilt rating is a rating scale to help diagnose ADHD in children ages six to twelve. *See* National Institute for Children's Health Quality, Vanderbilt Assessment Scales, http://www.nichq.org/resource/nichq-vanderbilt-assessment-scales (last accessed January 26, 2018).

light of Plaintiff's *pro se* status, however, the ALJ should have done more to develop the record on L.M.'s ADHD. *See Moran*, 569 F.3d at 113.

Ms. Hoyle noted on July 16, 2014 that L.M. had been diagnosed with ADHD (Tr. 322-23) and Dr. Chow, the agency consultative examiner, noted in her exam that "claimant was diagnosed with ADHD on 06/14 because she becomes involved in fights with other children, is unable to sit still, and has difficulty with concentration" (Tr. 468). On December 5, 2014, Dr. Hugh Bases diagnosed L.M. with "other specified conduct disorder, not elsewhere classified." (Tr. 544.) Dr. Greenberg testified at the August 2015 ALJ Hearing, "just my observations here, watching the claimant, would suggest that there is some indication of attention-deficit/hyperactivity disorder", but "[i]t's not clear[;] . . . there [are] no exhibits that really document [ADHD]." (Tr. 78, 82.) Dr. Greenberg also noted that claimant was, at one point, taking Risperdal specifically for ADHD, until it began interfering with her seizure medications. (Tr. 78.)

Notwithstanding these indications of ADHD, the administrative record does not contain any records from the ADHD clinic or the "06/14" examination in which claimant was diagnosed with ADHD. On this issue, the ALJ should have developed the record by either seeking the opinion of the treating physician—who is unknown to this Court because the medical record is not in the administrative record—or retaining a qualified expert, particularly where the Commissioner's own medical expert posited that claimant might have ADHD. (Tr. 78); *see Burger v. Astrue*, 282 F. App'x 883, 885 (2d Cir. 2008) ("Indeed, the relevant regulations specifically authorize the ALJ to pay for a consultative examination where necessary to ensure a developed record."). Further development of claimant's possible ADHD would not only possibly require the ALJ to evaluate an additional listing (Listing 112.11 – "Neurodevelopmental

Disorders"), but could also alter the ALJ's analysis as to the "interacting and relating with others" domain regarding L.M.'s seizure disorder.[4]

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's motion for judgment on the pleadings. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: January 26, 2018
      Brooklyn, New York

---

[4] This is significant because if L.M. is found to have a "marked" limitation in "interacting and relating with others" as well as in "health and well-being", she would qualify for disability benefits. *See* 20 C.F.R. § 416.926a.